UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ronald J. Fenney,

Plaintiff,

v.

Dakota, Minnesota & Eastern Railroad Corporation,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-1753 ADM/AJB

---

Judith K. Schermer, Esq., and Carolyn Guy, Esq., Schermer & Guy, P.L.L.P., Minneapolis, Minnesota, appeared for and on behalf of the Plaintiff.

Brian J. Donahoe, Esq., and Mark E. Salter, Esq., Cutler & Donahoe, L.L.P., Sioux Falls, South Dakota, appeared for and on behalf of the Defendant.

---

## I. INTRODUCTION

On November 14, 2001, the undersigned United States District Judge heard Defendant Dakota, Minnesota & Eastern Railroad Corporation's ("DM&E") Motion for Summary Judgment [Doc. No. 11]. Defendant DM&E seeks summary judgment on Plaintiff Ronald J. Fenney's ("Plaintiff") discrimination claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Compl. ¶ 25. For the reasons set forth below, DM&E's motion is granted.

## II. BACKGROUND[1]

Twenty-eight years ago, in 1974, at a Minneapolis, Minnesota, railroad yard, Plaintiff seriously injured his right hand in an accident. *See* Fenney Dep., at 10. As a result, Plaintiff lost his right thumb and middle fingertip. *Id.* Plaintiff now seeks to receive 30 to 60 minutes extra

---

[1] The evidence is reviewed in the light most favorable to Plaintiff.

JAN 15 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

time, in addition to the standard two-hour call time, to prepare for work at a particular railroad job. *See* Donahoe Aff., Ex. J (Letter from Fenney to DM&E of 02/12/1998).

At the time of his accident, Plaintiff worked for the Chicago & North Western Railway ("CNW"). *See* Fenney Dep., at 10. Plaintiff continued as an employee of CNW until 1988. *Id.* at 12. In 1990, DM&E hired Plaintiff as a locomotive engineer. *Id.* at 22. Plaintiff is DM&E's Train and Engine service employee, responsible for moving trains on the DM&E Railroad.

Plaintiff's request for extra call time requires an understanding of the job categories of the DM&E Railroad. DM&E Train and Engine service crews consist of either a conductor and locomotive engineer, or a brakeman, conductor and locomotive engineer. *Id.* at 40. Locomotive engineers generally are higher paid than conductors. *See* Colbert Dep., at 135. Yard jobs generally have a designated starting time for a crew's shift set on a regular schedule. *Id.* at 133. Train and Engine service employees bid on such jobs and hold them pursuant to a seniority system governed by a collective bargaining agreement. *See* Donahoe Aff., Exs. E & F. Yard jobs are the most coveted jobs on the railroad because of the set number of hours, regular schedule and favorable wage opportunities. *See* Fenney Dep., at 43, 87-88.

In contrast with yard jobs, on-call locomotive engineers may be summoned on an as-needed basis pursuant to the seniority rules and terms of the collective bargaining agreement. *See* Colbert Dep., at 134; Wessler Dep., at 14. On-call Train and Engine service employees receive notification of the start time for a particular job shift from employees at DM&E headquarters in Brookings, South Dakota. *See* Colbert Dep., at 18; Wessler Dep., at 18. The collective bargaining agreement requires a minimum calling time of 1.5 hours for on-call employees. *See* Donahoe Exs. E & F. Prior to 1997, DM&E provided advance calls based on

individualized requested times by employees. The advance call times varied from as short as 30 minutes to in excess of 4 hours. *See* Eberline Dep., at 18-19; Waltman Dep., at 9, 14. However, crew calling became complicated for DM&E to administer because of the various call times requested by different employees.

In 1997, DM&E hired a new transportation officer and new superintendent of transportation. *See* Wessler Dep., at 5. To increase efficiency, the new superintendent of transportation instituted a standard two-hour advance call time for all on-call employees staying at home. *Id.* at 21. Although DM&E has no policy requiring an employee to live within a certain distance of his regular duty station, it is the responsibility of the employee to establish commuting arrangements and report to duty on time. *Id.* at 37.

At all times relevant to his employment with DM&E, Plaintiff lived in South Minneapolis. *See* Fenney Dep., at 4-5. From his home, the nearest duty station for the DM&E Railroad is Waseca, Minnesota. The distance between Plaintiff's residence and that DM&E station is approximately 73 miles. One way, Plaintiff travels a minimum of one hour and ten minutes from his home to his normal duty station at Waseca. *Id.* at 32. Plaintiff drives a standard automobile without any special features. *Id.* at 53. No other duty station on the DM&E Railroad is closer to Plaintiff's home.

As an on-call locomotive engineer, Plaintiff was adversely affected by DM&E's uniform two-hour advance call time for on-call employees staying at home. Plaintiff alleges that, prior to 1997, DM&E provided him a two and one-half to three hour call whenever he requested. Because of the calling time issue, Plaintiff chose to be demoted from on-call locomotive engineer to a yard conductor job with set hours on a regular schedule. Plaintiff lacks seniority to work as a

locomotive engineer on a regularly scheduled basis. Plaintiff contends that his yard conductor job pays less than an on-call locomotive engineer position.

## III. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant has the burden of showing that no genuine issue of material fact exists. *See Celotex*, 477 U.S. at 323. Once the movant meets its burden, the party opposing the motion may not rest upon mere allegations or denials, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a "scintilla of evidence" in support of the non-movant's position is insufficient; there must be evidence on which a jury could reasonably find for the non-movant. *Anderson*, 477 U.S. at 252. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

Plaintiff alleges his hand injury renders him unable to bathe, dress, and prepare meals as quickly as others. He argues that DM&E discriminated against him in violation of the ADA by failing to accommodate his condition. Specifically, Plaintiff seeks extra call time. In his current position as a yard conductor on a regular schedule, Plaintiff alleges that he earns less money than he would as an on-call locomotive engineer.

The stated purpose of the ADA is "to provide a clear and comprehensive national

mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA prohibits employers from discriminating against a qualified individual with a disability because of that disability. 42 U.S.C. § 12112(a). A "qualified individual with a disability" is a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8).

To establish a prima facie case of discrimination under the ADA, Plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999) (en banc); *Webb v. Mercy Hosp.*, 102 F.3d 958, 959-60 (8th Cir. 1996). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A). Plaintiff's qualifications to perform the essential functions of his job at DM&E are not at issue. He is fully capable of performing his duties as a Train and Engine service employee. At issue is whether Plaintiff is disabled within the meaning of the ADA and whether Plaintiff has suffered an adverse employment action because of his disability.

**A. Disability**

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §§ 12102(2)(A)-

(C). The determination of a person's disability for purposes of the ADA is made with reference to the mitigating measures that person employs. *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 482 (1999). Plaintiff is unable to demonstrate the existence of a genuine issue of material fact regarding whether his impairment constitutes a "disability" within any of the three definitions under the ADA.

**1. Impairment substantially limits a major life activity**

Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R.§ 1630.2(i). Several factors may be considered to determine whether a person is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact. *Maziarka v. Mills Fleet Farm, Inc.*, 245 F.3d 675, 679 (8th Cir. 2001) (citing 29 C.F.R. §§ 1630.2(j)(2)(i)-(iii)). A major life activity is substantially limited if an individual is unable to "perform a basic function that the average person in the general population can perform" or is significantly restricted in "the condition, manner, or duration under which [he] can perform a particular major life activity as compared to an average person in the general population." *Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1206 (8th Cir. 1997); *see* 29 C.F.R. § 1630.2(j)(1).

Plaintiff must present evidence from which a reasonable inference can be drawn that a major life activity is substantially limited. *Snow*, 128 F.3d at 1207. "'[S]ubstantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.'" *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, No. 00-1089, 2002 WL 15402, at *9 (U.S. Jan. 8, 2002). "The word

'substantial' thus clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities." *Id.* Plaintiff alleges that he requires more time than other people to bathe, dress, and prepare meals. Plaintiff requested DM&E to provide him an extra half-hour in the summer and an extra hour in the winter in addition to the standard two-hour call time. *See* Donahoe Aff., Ex. J (Letter from Fenney to DM&E of 02/12/1998); Fenney Dep., at 47-48, 54-56. The slightly longer amount of time Plaintiff requires to bathe, dress, and eat may be inconvenient, but Plaintiff's condition does not *substantially* limit his ability to care for himself. Plaintiff requires neither special equipment to care for himself nor anyone to assist him. An additional 30 minutes in the summer and 60 minutes in the winter does not constitute a significantly longer time than the average person to ready himself for work.[2] Plaintiff is not *significantly* restricted in his ability to care for himself. While Plaintiff's abilities may be impaired, his impairment does not substantially limit a major life opportunity sufficient to constitute a disability within the ADA's protections.

**2. Record of such an impairment**

Plaintiff has failed to set forth sufficient evidence to establish that he has a record of a disability.[3] As discussed above, Plaintiff's condition does not substantially limit a major life activity. Accordingly, no record exists of an impairment that substantially limits a major life activity.

---

[2] Indeed, even the individuals who form the "average" in the general population may vary considerably in their preparation time for work.

[3] Because subsections (B) & (C) must be read in conjunction with subsection (A), the "impairment" must substantially limit a major life activity. *See* 42 U.S.C. §§ 12102(2)(A)-(C); *Miller v. City of Springfield*, 146 F.3d 612, 614 (8th Cir. 1998).

### 3. Regarded as having such an impairment

There is inadequate evidence that DM&E regarded Plaintiff as disabled. Plaintiff is fully able to perform his job duties. The two ways in which an individual may fall within the ADA's third definition of "disability" are: (1) an employer mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) an employer mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. *Sutton*, 527 U.S. at 489. "In both cases, it is necessary that [the employer] entertain misperceptions about the individual--it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.* Here, no evidence exists to indicate that DM&E believed Plaintiff suffered a substantially limiting impairment.

Plaintiff is unable to create the existence of a genuine issue of material fact regarding whether he is "disabled" within any of the ADA's three definitions.

## B. Adverse Employment Action Because of Disability

Even if Plaintiff were found to be "disabled" within the meaning of the ADA, he must demonstrate that he suffered an adverse employment action because of his disability. Plaintiff's current position as a yard conductor with a regular schedule is a highly desirable job among DM&E employees. *See* Fenney Dep., at 42-43. Plaintiff voluntarily chose to assume that position. DM&E did not request that he do so. DM&E never disciplined Plaintiff for being late for a work shift. *Id.* at 51-52. Plaintiff cannot create an adverse employment action by freely choosing to change positions.

**C. Legitimate, Nondiscriminatory Reason**

The burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), applies to claims brought under the ADA. *See Snow*, 128 F.3d at 1206; *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 616 (8th Cir. 1997). Assuming Plaintiff establishes his prima facie case, the burden of production shifts to DM&E to articulate a legitimate, nondiscriminatory reason for its action. *McDonnell Douglas*, 411 U.S. at 802. DM&E has presented such a rationale for its uniform call time: efficiency. Faced with the logistical challenges of calling many different employees with varying call times, DM&E established a standard two-hour advance call time for all on-call employees staying at home. Because DM&E has articulated a legitimate, nondiscriminatory reason for the uniform call time, the burden of production shifts back to Plaintiff to demonstrate that DM&E's proffered reason is a pretext for unlawful disability discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993). The ultimate burden of proving unlawful discrimination remains on Plaintiff. *Id.* at 507.

There is insufficient evidence from which to reasonably infer intentional discrimination under the circumstances of this case. Plaintiff has failed to present evidence creating a genuine factual dispute that DM&E's uniform call time was a pretext for unlawful disability discrimination. Plaintiff cannot finesse the ADA's anti-discrimination protections to receive extra call time for his commute to work from his choice of city of residence.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that DM&E's Motion for Summary Judgment [Doc. No. 11] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: January 15, 2002

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

*This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.*

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd